ANNA ELGIN WEST, as Administratrix, etc., of DELIA ELGIN, Deceased, Respondent, *v.* WOMAN'S HOSPITAL IN THE STATE OF NEW YORK, Appellant.

First Department, November 9, 1917.

Master and servant — negligence — death by fall down elevator shaft — erroneous charge — unexplained ascent of elevator during absence of operator.

Where the operator of an elevator in a hospital, following instructions, was accustomed to leave the shaft door open about three inches while delivering diet lists to the kitchen owing to the fact that the door could not be opened from the outside if it were once closed, and it appeared that during the absence of the operator, under the circumstances aforesaid, an employee

of the hospital was found dead at the bottom of the shaft, it was error for the court to charge, in effect, that the jury could find a defect in the elevator because after the accident the car was found to have ascended to an upper floor during the absence of the operator. Under the circumstances the doctrine of *res ipsa loquitur* did not apply and the charge was prejudicial error requiring the reversal of a judgment for the plaintiff.

APPEAL by the defendant, Woman's Hospital in the State of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 8th day of March, 1917, upon the verdict of a jury for $2,500, and also from an order entered in said clerk's office on the 7th day of March, 1917, denying defendant's motion for a new trial made upon the minutes.

*Walter L. Glenney*, for the appellant.

*Noah A. Stancliffe*, for the respondent.

DAVIS, J.:

On May 5, 1915, the deceased was employed by the defendant as a waitress in the help's dining room on the sixth floor of defendant's premises. She had been in defendant's employ about two weeks. On the day in question she fell down the elevator shaft in defendant's premises and was killed. The action was brought to recover damages under the Employers' Liability Act. (See Labor Law [Consol. Laws, chap. 31; Laws of 1909, chap. 36], art. 14, as amd. by Laws of 1910, chap. 352.) The elevator in question was driven by electricity and was used to carry employees up and down and also for conveying dishes from floor to floor. It was controlled by a rope, the car being moved by pulling the rope up or down according as the car was to ascend or descend. It was run by Joseph Brown, who also did porter work and ran errands. Each night it was the duty of Brown to receive the diet lists from the head nurses of the different wards and take them to the kitchen on the sixth floor. On these occasions when he reached the sixth floor he left the elevator and took the diet lists into the kitchen, a distance of forty or fifty feet from the elevator, leaving the diet lists there and returning to his elevator. As the door of the elevator shaft when closed could not be opened from the hallway, on leaving

First Department, November, 1917. [Vol. 180.

his elevator it was his custom to leave the shaft door open about three inches, thus making it possible for him to get into the elevator on his return. All this was in accordance with instructions given him by the superintendent. On the evening of the accident when Brown left his elevator, he left the door of the shaft open about three inches, as usual. He saw the deceased working in the dining room nearby the elevator. While in the kitchen he heard a noise. He ran out to the elevator and found the elevator door wide open and the elevator gone. The elevator was at the floor above. He then ran downstairs and found that the deceased was dead at the bottom of the elevator shaft. No witness saw the girl at the door of the elevator, no one saw her fall. There was no evidence of any defect in the elevator itself. On the contrary, it was examined and operated by the engineer of the defendant immediately after the accident, and two days later by an elevator inspector in the employ of the city of New York. Both of these witnesses testified that they inspected the doors, gates, cables and mechanism of the elevator and found no defect whatever.

It was plaintiff's contention that during the absence of the operator the elevator of itself moved up to the seventh floor, which with the open shaft door created a dangerous condition leading to the accident to the deceased. In its charge to the jury the court emphasized two assignments of negligence, the leaving open of the elevator shaft door, and the alleged undirected ascent of the elevator from the sixth to the seventh floor. It was the claim of the plaintiff that these two elements of negligence together caused the deceased to fall down the shaft by inviting her to pass through the door in the mistaken belief that the elevator was there.

The counsel for the defendant asked the court to charge " that negligence on the part of the defendant cannot be predicated * * * on any defect in the elevator, or machinery, or appliances connected with the elevator." In response, the court said: " I decline to charge that, because that is a question for the jury to determine on the evidence, on the ascent of the elevator, undirected, from the sixth to the seventh floor, whether or not there was a defect in the machinery." To this charge the defendant excepted.

The jury under this instruction were allowed to infer from the mere fact that immediately after the accident the elevator was found at the seventh floor that it had ascended because of some defect in the operating machinery. A serious objection to this charge is that the court assumed without evidence that the elevator ascended undirected. During the operator's absence from the elevator it could have been operated by some other employee or by the deceased herself. It was not a case for the application of the doctrine *res ipsa loquitur*, and in leaving the jury at liberty to find from the mere fact of the elevator's being at the seventh floor that the machinery was defective, was prejudicial error requiring the reversal of this judgment.

The judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., SCOTT, SMITH and SHEARN, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.